IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tracy Barrick,                          :
                    Petitioner          :
                                        :
          v.                            :    No. 189 C.D. 2016
                                        :    Nos. 278 – 286 C.D. 2016
Unemployment Compensation               :    Submitted: November 23, 2016
Board of Review,                        :
                    Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: February 27, 2017

          In these consolidated appeals, Tracy Barrick (Claimant) petitions for
this Court's review of ten separate orders of the Unemployment Compensation
Board of Review (Board) dismissing her appeals as untimely under Section 501(e)
of the Unemployment Compensation Law (Law).[1]   Claimant argues that her
appeals to the Referee, and later to the Board, should have been allowed *nunc pro
tunc*.  Concluding that there was a breakdown in the administrative process that
justifies *nunc pro tunc* relief, we reverse and remand.

          Claimant has been working for Sheetz, Inc. (Employer) since 2003.
Between 2008 and 2013, unemployment compensation claims were filed in
Claimant's name.  In 2015, the Altoona UC Service Center initiated actions against
Claimant for overpayments of benefits.  Claimant appealed, alleging that she was a

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §821(e).

victim of identity theft and had never sought or received the benefit payments in question. In April 2015, a hearing was held before a Referee, who remanded the case to the Service Center to investigate Claimant's identity theft claim.

In May 2015, the Service Center contacted Claimant. It did not inquire into her claim about identity theft. Instead, it sent her questionnaires about the discrepancies between her actual and reported earnings for a series of claim weeks between 2008 and 2013. The questionnaires noted that most of Claimant's reported earnings were lower than the amounts reported by Employer; for many weeks, Claimant reported no earnings. Claimant filled out the questionnaires by stating that she did not apply for unemployment benefits; rather, she had been working full time during the weeks in question and had no need for unemployment compensation.

On July 30, 2015, the Service Center interviewed Claimant by phone, again questioning her about her under-reported earnings. Certified Record Item No. 4, Record of Oral Interview, at 1. Claimant replied that "[w]hen [she] filed, [she] filed what was on [her] paycheck."[2] *Id.* The Service Center also asked Claimant about her identity theft claim. Claimant answered that she did not know who filed the compensation claims in her name, and she did not know who had access to her personal identification number, which was needed to file the applications for benefits. *Id.*

From July 31, 2015, through August 20, 2015, the Service Center issued ten new notices of determination, each finding that Claimant was ineligible for benefits paid to her from 2008 to 2013 and liable for fault overpayments and

---

[2] Claimant acknowledged that she filed claims for unemployment compensation in 2010, but they were accurate. Notes of Testimony (N.T.), 9/16/2015 (Part II), at 7.

penalties. Claimant appealed each notice. Four of her appeals were filed after the appeal deadlines had expired.[3] On September 16, 2015, the Referee conducted two hearings on the appeals.

The first hearing addressed the timeliness of Claimant's four late-filed appeals. Claimant argued that these four appeals should be allowed *nunc pro tunc* due to "the confusing nature of this case." Notes of Testimony (N.T.) (Part I), 9/16/2015, at 8. Claimant testified that the notices of determination that the Service Center issued in July and August 2015 simply repeated the notices it had issued earlier in 2015 following the Referee's remand. None of the notices addressed the remand issue of identity theft. Thus, she could not discern whether the investigation ordered by the Referee on remand had been completed or was still pending. Claimant testified that after she received the notices of determination from the Service Center, she gave them to her counsel, James Jacobs, Esq. (Counsel). She did not meet with Counsel to review those notices.

At the second hearing on September 16, 2015, the Referee addressed the merits of Claimant's six timely appeals. Claimant testified that with the exception of some claims filed in 2010, she did not file the unemployment compensation claims that prompted the Service Center's fraud overpayment actions. She testified that the information she provided in her 2010 claims was accurate to the best of her knowledge. Claimant testified that she told the Service Center during the phone interview "the same thing that [she had] said all along," *i.e.*, for the claims she filed, she reported her income; the other claims were not filed by her. N.T. (Part II), 9/16/2015, at 8. Claimant further testified that her

---

[3] The docket numbers of the late appeals were EUC-15-09-D-9492, 15-09-D-9497, 15-09-D-9499, and 15-09-D-9501.

niece, who had resided with her from 2007 to 2014, "[had] take[n] advantage of other individuals." *Id*. at 7. Claimant testified that her niece knew Claimant's workplace, address, date of birth, and social security number, and she had the ability to access Claimant's post office box. Claimant testified that she filed an identity theft claim with the Internal Revenue Service (IRS) and a police report in 2012, after she found out that someone had filed a tax return in her disabled daughter's name. However, she did not file a police report regarding the allegations of identity theft she raised in connection with the benefit claims that caused the Service Center's fraud overpayment actions against her.[4]

In ten separate orders, the Referee affirmed the Service Center's determinations. He dismissed Claimant's four late-filed appeals, which made the Service Center's determinations final under Section 501(e) of the Law, 43 P.S. §821(e).[5] The Referee also denied Claimant's six timely appeals on the merits. The Referee faulted Claimant for not inquiring into where the Department had deposited the benefit payments when the Service Center contacted her in May

---

[4] The Referee faulted Claimant for not reporting the identity theft, which prompted the UC Service Center to initiate the actions against her. One may ask why the UC Service Center did not report the matter to the law enforcement authorities. If Claimant did not receive the payments, as she claims, she is a bystander but not the victim. The Department is the victim.

[5] Section 501(e) of the Law provides:

> *Unless the claimant* or last employer or base-year employer of the claimant *files an appeal with the board*, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), *within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final* and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(e)(emphasis added).

2015 and again during the phone interview on July 30, 2015. Referee's Decision and Order (EUC-15-09-D-9496) at 3. The orders were mailed to Claimant on September 17, 2015, which stated that the last day for her to appeal to the Board was October 2, 2015.

Claimant appealed on October 9, 2015. On October 30, 2015, Claimant requested a hearing on the issue of the timeliness of her appeals. The Board then remanded the matter to the Referee, who was designated as the Board's hearing officer to receive testimony and evidence regarding the timeliness of Claimant's appeals to the Board. A hearing was conducted on November 24, 2015.

At the hearing, both Claimant and Counsel testified. Claimant testified that after she received the Referee's decisions in the mail, she delivered them to Dorothy Sowers, the secretary at Counsel's office, with instructions to appeal them. Claimant testified that she delivered the decisions to Sowers before the October 2, 2015, appeal deadline. She further testified that she did not receive the unemployment compensation benefits as claimed by the Service Center. Counsel testified that upon receipt of a legal document in his office, the standard practice is for Sowers to log any deadline for the matter in a schedule book. For reasons unknown, Sowers did not do so after receiving Claimant's documents. Counsel testified that by the time he found Claimant's documents, the appeal deadline had expired. Counsel argued that Claimant should be entitled to appeal *nunc pro tunc* because the delay was not caused by Claimant's fault but rather by a breakdown in the administrative system. He argued that he and his client were still waiting for the investigation that the Referee had ordered on remand. Indeed,

Claimant asserts that the Service Center is in violation of the remand order, which constitutes a breakdown in the administrative system.

On January 4, 2016, the Board issued ten orders, each of which dismissed Claimant's appeals as untimely under Section 501(e) of the Law, 43 P.S. §821(e). In doing so, the Board found no evidence that Claimant "was misinformed or misled by the unemployment compensation authorities regarding her right or the necessity to appeal." Board Adjudication, Finding of Fact No. 11. Claimant now petitions for this Court's review.[6]

On appeal, Claimant argues that the Board erred by not allowing her to proceed with her appeals *nunc pro tunc*.[7] Citing *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979), she asserts that she should have been allowed to appeal *nunc pro tunc* because there has been a "breakdown in the [unemployment compensation] system." Claimant Brief at 8. Claimant explains that the Service

---

[6] This Court's review in an unemployment compensation case is to determine whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *UPMC Health System v. Unemployment Compensation Board of Review*, 852 A.2d 467, 469 n.3 (Pa. Cmwlth. 2004).

[7] Claimant also argues that she was deprived of her right to due process "by bureaucratic chicanery of the Department of Labor." Claimant's Brief at 10. Claimant argues that the Service Center's notices of determination were "confusing" because they contained no investigative results on the identity theft issue, thereby violating the Referee's order that directed the Service Center to conduct an investigation. Claimant's Brief at 11. Claimant argues that it is "inherently unfair" to allow the Service Center to violate the Referee's orders, and her due process rights were violated as a result. *Id*.

We note that Claimant never raised a due process claim before the Referee or the Board. It is well settled that a party who proceeded before a Commonwealth agency under the terms of a particular statute may not raise upon appeal any question, other than the validity of the statute, that was not raised before the agency unless allowed by this Court upon due cause shown. 2 Pa. C.S. §703(a); *Placid v. Unemployment Compensation Board of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981). Because Claimant raised this issue for the first time on appeal, we are precluded from considering it.

Center failed to investigate her claim of identity theft as the Referee had ordered; instead, the Service Center dismissed the decisions remanded by the Referee and then reissued new decisions without explaining its investigative findings. Claimant asserts that the Service Center's actions in this regard created confusion. Claimant Brief at 9. Claimant argues that these facts support a finding of an "extenuating circumstance" that justifies an appeal *nunc pro tunc*.

Section 501(e) of the Law requires that an appeal from a Bureau determination be filed within 15 days of the mailing date of that determination; otherwise the determination becomes final, and the Board lacks jurisdiction to consider the matter. 43 P.S. §821(e); *Darroch v. Unemployment Compensation Board of Review*, 627 A.2d 1235, 1237 (Pa. Cmwlth. 1993). The statutory time limit for filing an appeal is mandatory "in the absence of fraud or manifestly wrongful or negligent conduct of the administrative authorities." *Blast Intermediate Unit No. 17 v. Unemployment Compensation Board of Review*, 645 A.2d 447, 449 (Pa. Cmwlth. 1994). An appeal may be filed *nunc pro tunc* when the delay in filing the appeal was caused by extraordinary circumstances involving "'fraud or some breakdown in the court's operation through a default of its officers.'" *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996) (quoting *Bass*, 401 A.2d at 1135). Where an appellant asserts that the late appeal was caused by non-negligent circumstances related to appellant or her counsel, she must show that the appeal was filed within a short time after she or her counsel had an opportunity to address the untimeliness, the period that elapsed was of a short duration, and the appellee was not prejudiced by the delay. *Id*.

7

We conclude that there has been a breakdown in the administrative process that warrants *nunc pro tunc* relief. In April 2015, the Referee remanded the original overpayment actions with instructions to investigate Claimant's identity theft claim. Instead, the Service Center sent Claimant questionnaires about the discrepancies between her actual and reported earnings for numerous claim weeks, ignoring her repeated protests that she never filed the claims at issue. The Service Center then refiled its overpayment decisions under new claim numbers, with no explanation of its investigation into identity theft. The new determinations found Claimant liable for fault overpayments and penalties, but they did not find whether the benefit payments were deposited into an account owned by Claimant or under her control. Nor was there any evidence presented at the hearing, such as bank statements, to counter Claimant's contention that she never received the benefit payments in question. As Counsel explained, he and his client were still waiting for the remand decisions. By making new decisions, on remand, under brand new docket numbers, the Service Center created sufficient confusion to constitute a breakdown in the administrative system. Indeed, the very number of decisions that were flying about created confusion and a consequent breakdown in the administrative system.

The failure of Counsel's secretary to log the appeal deadlines is not dispositive. As Counsel argued before the Board, it was the breakdown in the administrative process that brought Claimant back for a second round of proceedings. "[H]ad the unemployment authorities conducted an investigation … on the issue of whether or not any type of identity theft, fraud by a third party, had occurred, [Claimant] probably wouldn't have these cases filed." N.T., 11/24/2015, at 6. Further, Counsel took action to get the appeals filed as soon as he learned of

8

his secretary's error, and there is no evidence to indicate that the lateness of Claimant's appeals prejudiced the Department.

For all of the foregoing reasons, we hold that the Board erred in rejecting Claimant's request to proceed *nunc pro tunc*. Accordingly, the Board's orders are reversed and the matter is remanded to the Board with the direction to remand the matter to the Referee for a hearing on the merits of Claimant's claims, including her assertion of identity theft. First, and foremost, the Referee must establish whether the compensation benefits at issue were paid into an account that is owned by Claimant or under her control. The *sine qua non* of a claim to recover the overpayment of compensation benefits from an individual is proof that the respondent named by the Service Center in its fraud overpayment action did, in fact, receive the overpayment.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tracy Barrick,                    :
        Petitioner      :
                        :
      v.             :   No. 189 C.D. 2016
                        :   Nos. 278 – 286 C.D. 2016
Unemployment Compensation  :
Board of Review,          :
        Respondent   :

## **O R D E R**

AND NOW, this 27th day of February, 2017, the orders of the Unemployment Compensation Board of Review (Board) dated January 4, 2016, in the above-captioned matters are hereby REVERSED. The matter is REMANDED to the Board with the direction to remand the matter to the Referee for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge